

## NUMBER 13-11-00245-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

NICOLAS CANTU,                                                                    Appellant,

v.

HIDALGO COUNTY, TEXAS,                                                        Appellee.

### On appeal from the 332nd District Court
### of Hidalgo County, Texas.

## O P I N I O N

### Before Justices Rodriguez, Garza and Perkes
### Opinion by Justice Garza

This is an appeal from a judgment notwithstanding the verdict in an employment discrimination and retaliation case. Appellant, Nicolas Cantu, contends that the trial court erred in rendering judgment that he take nothing by way of his suit against appellee, Hidalgo County, Texas (the "County"). We affirm.

## I. BACKGROUND

Cantu was employed by the County for several years as a court coordinator. In 2006, the County terminated his employment. Believing he was discriminated against, Cantu sought to invoke his rights to a grievance hearing regarding his termination as provided by the County's personnel policy. Cantu also filed a charge of age and gender discrimination with the Civil Rights Division of the Texas Workforce Commission (the "Division").

A Level 1 grievance hearing was held pursuant to County policy, and the hearing officer found against Cantu. Cantu then requested a Level 2 grievance hearing, but the County unilaterally withdrew Cantu's request, noting that Cantu had already filed a charge of discrimination with the Division and agreed to participate in mediation related to that charge.

After receiving a right-to-sue letter from the Division, Cantu sued the County, contending that he was discriminated against and wrongfully discharged. Cantu also alleged that, by not allowing him to pursue the internal grievance process to its conclusion, the County unlawfully retaliated against him for filing the charge with the Division. *See* TEX. LABOR CODE ANN. § 21.055 (West 2006).

A jury trial was held. The only theory of liability submitted to the jury was based on the alleged retaliation. Question number 1 of the trial court's charge asked the jury: (a) whether the County "discharge[d Cantu] because he opposed a discriminatory practice; made or filed a charge of discrimination; or filed a complaint with the [Division]"; and (b) whether the County "refuse[d] to allow [Cantu] his right to a hearing under the Hidalgo County Policy Manual because he opposed a discriminatory practice;

2

made or filed a charge of discrimination; or filed a complaint with the [Division]." The jury answered "no" to question 1(a) but "yes" to question 1(b). The jury also found that Cantu did not "make a diligent search for work after his discharge," but nevertheless awarded Cantu $100,000 in back pay.

The County then filed a "Motion to Disregard and to Enter Judgment" in which it asked the trial court to disregard the jury's answer to question 1(b) on grounds that (1) there was no evidence to support the answer and (2) the answer was immaterial. In arguing that the jury's answer to question 1(b) was immaterial, the County contended that it could not possibly have discriminated or retaliated against Cantu on the basis of Cantu's having filed a charge with the Division because he had already been terminated at the time he filed the charge. The trial court granted the County's motion and rendered judgment notwithstanding the verdict. This appeal followed.

## II. DISCUSSION

On appeal, Cantu contends, by several multifarious issues, that the trial court erred in rendering judgment in favor of the County.[1] We address the issues together.

### A. Standard of Review

After the jury returns its verdict, if there is no irreconcilable conflict in the jury's findings, the trial court is generally under a duty to render a judgment that conforms to that verdict. TEX. R. CIV. P. 301; *see Howell Crude Oil Co. v. Donna Refinery Partners*, 928 S.W.2d 100, 111 (Tex. App.—Houston [14th Dist.] 1996, writ denied). However, a trial court may disregard a jury finding and enter a judgment notwithstanding the verdict

---

[1] We note that Cantu's initial appellate brief does not conform with Texas Rule of Appellate Procedure 9.4 in that it is not double-spaced, and it does not conform with Texas Rule of Appellate Procedure 38.1 in that neither the statement of issues nor the argument section are clear or concise. *See* TEX. R. APP. P. 9.4(d), 38.1(i). In our sole discretion, however, we choose to accept and consider the brief for purposes of this appeal.

3

if (1) the finding is immaterial or (2) there is no evidence to support one or more of the jury findings on issues necessary to liability. *See* TEX. R. CIV. P. 301; *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *Williams v. Briscoe*, 137 S.W.3d 120, 124 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

To determine if there is no evidence to support a finding, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The judgment notwithstanding the verdict will be upheld if there is no evidence of at least one essential element of the plaintiff's claim. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

A finding is "immaterial" when the corresponding question either: (1) should not have been submitted, (2) calls for a finding beyond the province of the jury, such as a question of law, or (3) was properly submitted but has been rendered immaterial by other findings. *Se. Pipe Line Co., Inc. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999); *Spencer*, 876 S.W.2d at 157.

## B. Applicable Law

Cantu's retaliation claim was brought under section 21.055 of the Texas Commission on Human Rights Act (the "TCHRA"). *See* TEX. LABOR CODE ANN. § 21.055.[2] To prove unlawful retaliation under the TCHRA, the plaintiff must make a prima facie showing that (1) he engaged in a protected activity, (2) his employer took an

---

[2] We follow federal statutes and cases in applying the TCHRA. *See* TEX. LABOR CODE ANN. § 21.001 (West 2006); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (noting that, by enacting the TCHRA, the Texas Legislature "intended to correlate state law with federal law in employment discrimination cases").

4

"adverse employment action" after or contemporaneous with the protected activity, and (3) a causal link existed between the protected activity and the adverse action. *Dias v. Goodman Mfg. Co.,* 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). An employee engages in a protected activity if the employee, under labor code chapter 21, either: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. TEX. LABOR CODE ANN. § 21.055. An "adverse employment action" is one that a reasonable employee would find to be materially adverse and is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). If the plaintiff makes the prima facie showing, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory purpose for the adverse employment action. *Dias*, 214 S.W.3d at 676 (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)).

**C.     Analysis**

It is undisputed that Cantu engaged in a protected activity by filing a charge under chapter 21. *See* TEX. LABOR CODE ANN. § 21.055. Moreover, the County concedes that it terminated grievance proceedings initiated by Cantu because Cantu filed his charge of discrimination; that is, it does not dispute that there is a "causal link" between Cantu's filing his charge and the County's termination of grievance proceedings.[3] *See Dias,* 214 S.W.3d at 676. The main point of contention between the

---

[3] In particular, the "Statement of Facts" section of the County's appellate brief states in relevant part:

After his discharge, [Cantu] filed a charge of discrimination with the [Division]. As a result

5

parties, therefore, is whether the County's termination of grievance proceedings constituted an "adverse employment action" against Cantu.[4]

The County asserted in its "Motion to Disregard and to Enter Judgment" and argues on appeal that its decision to terminate the internal grievance proceedings initiated by Cantu does not constitute an "adverse employment action" as a matter of law and therefore cannot form the basis of a retaliation suit. The County points to federal cases finding that an employee did not suffer an "adverse employment action" because his or her employment was already terminated. *See Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 516 (3d Cir. 2004) (holding that "[o]nce [the plaintiff's] employment was terminated it was not possible for her to suffer an adverse employment action"); *Amaro v. HSMTX/Stallones-Tomball, LLC*, 2010 U.S. Dist. LEXIS 22537, at *13 n.4 (S.D. Tex. Mar. 11, 2010) (noting that, to the extent plaintiff based her retaliation claim on defendant's post-termination denial of access to its facilities, "there is no evidence of an 'adverse employment action'"); *Thompson v. Sanderson Farms, Inc.*, 2006 U.S. Dist. LEXIS 68045, *26–*28 (S.D. Miss. Sept. 21, 2006) (holding that post-

---

of this filing, a [Division] mediation proceeding was initiated. *Because [Cantu] voluntarily elected and agreed to participate in the [Division]'s own statutory mediation procedure, [the County] did not pursue its own internal post-termination grievance procedure*, which would have been duplicative of the remedies chosen by [Cantu].

(Emphasis added.)

[4] We note that the jury did not find, either explicitly or implicitly, that the termination of grievance proceedings constituted an "adverse employment action." It was merely asked, in question 1(b) of the jury charge, whether or not the County "refuse[d] to allow [Cantu] his right to a hearing under the Hidalgo County Policy Manual." As noted, the County does not dispute the facts that (1) it refused to allow Cantu to continue with the grievance process and (2) it did so because Cantu filed a discrimination charge with the Division. The County apparently contends that the evidence was nevertheless insufficient to support the jury's affirmative answer to question 1(b) because Cantu had no "right" under County policy to a Level 2 grievance hearing. We need not decide the question of whether the evidence was sufficient to support the finding, however, because of our conclusion herein that Cantu did not prove that he suffered harm. *See Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) (permitting trial court to disregard immaterial jury finding).

6

termination failure to provide a positive job reference did not constitute an "adverse employment action"). Cantu contends otherwise and notes that, in *Veprinsky v. Fluor Daniel, Inc.*, the federal Seventh Circuit Court of Appeals found that an employer's post-termination conduct could form the basis of a retaliation suit. *See* 87 F.3d 881, 888 (7th Cir. 1996).

We agree with the County that its termination of Cantu's internal grievance proceedings did not constitute an "adverse employment action." But this is not because post-termination actions may *never* form the basis of a retaliation claim, as the County urges. Instead, an employer's post-termination conduct may be actionable on retaliation grounds, but only under certain limited circumstances. In particular, to constitute an "adverse employment action," post-termination conduct must have a "tangible adverse effect" on the terms and conditions of the plaintiff's current or prospective employment. *Waters v. Home Depot U.S.A., Inc.*, 159 F. App'x 943, 944 (11th Cir. 2005). "It is an employee's discharge or other employment impairment that evidences actionable retaliation, and *not* events subsequent to and unrelated to his employment." *Veprinsky*, 87 F.3d at 888 (citing *Reed v. Shepard*, 939 F.2d 484, 493 (7th Cir. 1991)) (emphasis in original).

Here, the evidence did not show that Cantu suffered a "tangible adverse effect" on the terms and conditions of his current or prospective employment. *See Waters*, 159 F. App'x at 944. Cantu does not claim that the internal grievance procedure could have afforded him greater relief than a charge of discrimination filed with the Division— reinstatement was available as a remedy under both procedures—nor does he claim that his chances of success were somehow greater in the internal forum as opposed to

7

the Division forum. Cantu does argue that the internal grievance procedure was preferable to the Division procedure because it may have taken less time to complete. However, potential delay in the resolution of Cantu's claim, alone, is not a "tangible adverse effect" on the terms of his current or future employment. *See id.* A reasonable employee would not find such a delay to be "materially adverse." *See Burlington N. & Santa Fe Ry.*, 548 U.S. at 57, 68 ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms." (emphasis in original)).

In 2007, the Fifth Circuit Court of Appeals considered a case with a very similar fact pattern in *Lynch v. Baylor University Medical Center*, 236 Fed. App'x 918, 918–19 (5th Cir. 2007) (per curiam).[5] In that case, the dismissed employee contended, as Cantu does here, that his employer retaliated against him by denying him access to the employer's internal post-termination grievance procedure. *See Lynch v. Baylor Univ. Med. Ctr.*, 2006 U.S. Dist. LEXIS 62408, at *25 (N.D. Tex. Aug. 23, 2006) (mem. op.). As in this case, neither party disputed the fact that the employer's conduct was the result of the plaintiff having filed a charge of discrimination with a government agency. *See id.* The trial court found that the employer's conduct "would not have dissuaded a reasonable employee from making a charge of discrimination" but rather was "a

---

[5] *Lynch* was designated by the Fifth Circuit as an unpublished opinion and therefore does not constitute precedent except as provided under Fifth Circuit Rule 47.5.4. *Lynch v. Baylor Univ. Med. Ctr.*, 236 Fed. App'x 918, 918 (5th Cir. 2007) (per curiam). Fifth Circuit Rule 47.5.4 states that unpublished opinions may be cited pursuant to Federal Rule of Appellate Procedure 32.1(a). 5TH CIR. R. 47.5. Under Rule 32.1(a), "a court of appeals may not prohibit a party from citing an unpublished opinion of a federal court for its persuasive value or for any other reason." FED. R. APP. P. 32, Notes of Advisory Committee on 2006 amendments (applicable to opinions issued on or after January 1, 2007). Therefore, although *Lynch* may not be binding precedent, we find it highly persuasive, especially considering its very similar fact pattern to the case at bar. *See Hulsey v. Astrue*, 280 Fed. App'x 756, 760 (10th Cir. 2008) ("While an unpublished decision of this circuit is not precedential, it may be cited for its persuasive value consistent with [Federal Rule of Appellate Procedure] 32.1 and [local rules]."); *see also In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) ("[U]npublished orders . . . may be considered persuasive authority, but they do not constrain a panel of the court from reaching a contrary conclusion in a published opinion after full consideration of the issue.").

reasonable defensive measure and an attempt to avoid parallel and duplicative proceedings." *Id.* at *29. The Fifth Circuit affirmed. *See* 236 Fed. App'x at 918–19. The appellate court assumed *arguendo* that "an employer's denial of access to its internal grievance proceeding, responding to the filing of a [discrimination] charge by the employee, can violate the anti-retaliation provision"[6] but nevertheless found that "the problem with appellant's case is the absence of injury or harm either as of the employer's action or as adjudicated by the judgment on appeal." *Id.* The court noted that appellant "would have gained nothing" if he was permitted to pursue the internal procedure, and it concluded that "[a]ppellant suffered no harm then or now." *Id.* at 919; *see United States v. New York City Transit Auth.*, 97 F.3d 672, 677, 678 (2d Cir. 1996) (holding that employer's policy of terminating internal grievance proceedings if employee also filed a complaint with an external agency was a "reasonable defensive measure" and therefore not retaliatory, in part because the policy allowed the employer to avoid "parallel and duplicative proceedings" and "considerations of efficiency and prudence have nothing to do with retaliatory animus or discrimination"; also noting that a contrary holding could impair an employer's ability to defend itself in a claim of discrimination because findings in an internal proceeding could prejudice it in external proceedings).

We believe the logic applied in *Lynch* holds here. Cantu has not shown that the County's internal grievance procedure, if allowed to continue to its conclusion, could have or would have afforded him relief beyond that which is available in the Division

---

[6] In a post-submission brief, Cantu implies that the *Lynch* court concluded as a matter of law that "an employer's denial of access to its internal grievance proceeding, responding to the filing of a [discrimination] charge by the employee," can violate the federal anti-retaliation statute. This is incorrect. The Fifth Circuit stated that it "assume[d]" the truth of that statement but that the plaintiff's suit failed in any event because he did not suffer harm. *Lynch*, 236 Fed. App'x at 918–19.

procedure. Moreover, actions such as those taken by the County here and by the employer in *Lynch* would not "dissuade a reasonable worker from making or supporting a charge of discrimination" because the relief available in the external forum is equivalent to that available in the internal forum. *See Burlington N. & Santa Fe Ry.*, 548 U.S. at 57. The County's actions were therefore not "materially adverse" to Cantu. *See id.* Accordingly, the trial court did not err in determining that the jury's answer to question 1(b) was immaterial and in rendering judgment notwithstanding the verdict. *See Spencer*, 876 S.W.2d at 157. Cantu's issues challenging the judgment are overruled.[7]

### III. CONCLUSION

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
1st day of November, 2012.

_____

[7] Cantu also raises issues suggesting that "back pay is the appropriate remedy for someone who has been denied a right to a hearing," and that the jury's finding that Cantu did not mitigate his damages did not preclude recovery of damages. In light of our conclusion that the trial court did not err in granting judgment in favor of the County, we need not address these issues. *See* TEX. R. APP. P. 47.1.

10