# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## No. 03-18-00153-CV

**Texas Department of Transportation, Appellant**

**v.**

**Albert Lara, Jr., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-16-005836, HONORABLE JAN SOIFER, JUDGE PRESIDING

## O P I N I O N

Albert Lara, Jr., sued the Texas Department of Transportation for terminating his employment after he took extended leave to recover from surgery. Lara alleges the Department failed to provide the reasonable accommodation required by the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code § 21.051, and retaliated against him for exercising his rights under that Act, *id.* § 21.055. The Department filed a combined motion for summary judgment and plea to the jurisdiction. The district court denied the motion and overruled the plea, and the Department filed timely appeal. We will affirm in part and reverse in part.

## BACKGROUND

Lara worked for the Department for two decades, most recently as a general engineering technician. In April of 2015, Lara was suffering from gastrointestinal distress. By April 22nd, he reported his illness to his superiors at the Department and indicated he could not

attend work and did not know when he could return. He underwent surgery on May 7th but had already exhausted his paid sick leave, vacation time, and "comp time." A week later, Lara requested extended paid leave from hours donated by co-workers through the Department's sick-leave pool ("SLP leave"). Lara's application for leave included his physician's statements that:

- Lara was not suffering from a catastrophic condition;

- he would not need multiple treatments;

- he was not able to perform the essential functions of his position;

- he could not "perform any work of any kind"; and

- the estimated date of his return was June 23rd, 2015.

Because Lara had already exhausted all of his own paid leave, and because government employees may only withdraw SLP leave upon a doctor's certification of a "catastrophic condition," *see* Tex. Gov't Code §§ 661.004–.006, Lara was not eligible for any paid leave. The Department granted him unpaid leave under the Family Medical Leave Act, 29 U.S.C. § 2601, through June 23rd.

After complications from surgery, Lara filed an updated leave request including physician's statements that Lara would need multiple treatments, did not expect to return until July 21st, and could not perform work of any kind. The physician's revised statements led the Department to designate Lara as an employee with a catastrophic condition and to offer him SLP leave sufficient to compensate for the time off work.

Lara subsequently filed another request for SLP leave with a new estimated return date of October 21st, 2015. The physician again reported that Lara could not work in any capacity.

The physician also reported that Lara would require one or more follow-up procedures upon recovery from the original surgery. The Department granted him additional SLP leave, bringing the total awarded to its maximum of 720 hours. *See* Tex. Gov't Code § 661.005 (delineating factors used to calculate maximum withdrawal). It then explained that this leave would expire on September 16th, 2015, and that no further leave would be available. Lara began contacting various staff members in hopes of obtaining additional leave.

On September 1st, Lara's supervisor met with a representative from the Department's human-relations office to determine how to respond to Lara's absence. On September 9th, the Department sent Lara written notice of termination if he could not return to work within seven days. He did not do so and was terminated as described in the notice.

Lara filed suit alleging discrimination and retaliation under the TCHRA. The Department responded with a defense of undue hardship, *see* Tex. Lab. Code § 21.128(b), arguing that it needed someone to perform Lara's duties and was no longer able to hold the position open pending his return. It then filed a combined motion for summary judgment and plea to the jurisdiction. The district court denied the motion and overruled the plea, and the Department timely perfected this appeal.

**STANDARD OF REVIEW**

The district court's jurisdiction is a question of law we review de novo. *Guevara v. H.E. Butt Grocery Co.*, 82 S.W.3d 550, 551 (Tex. App.—San Antonio 2002, pet. denied). "Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit." *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002); *see also*

3

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). A governmental unit may raise the issue of immunity and challenge jurisdiction "through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).

"The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute." *Id.* (citing *Garcia*, 372 S.W.3d at 637). If the defendant in such a case presents evidence of a legitimate, non-retaliatory justification for the disputed employment decision, the plaintiff cannot establish jurisdiction by merely pleading a prima facie claim of discrimination or retaliation. *Id.* at 784. Instead, "to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Id.* at 771 (citing *Miranda*, 133 S.W.3d at 221, 225–26). "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id.* (citing *Miranda*, 133 S.W.3d at 228).

## DISCUSSION

The Department contends the district court erred by overruling its plea to the jurisdiction and failing to dismiss Lara's claims of discrimination and retaliation.

**Discrimination**

The TCHRA prohibits workplace discrimination that occurs "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." Tex. Lab. Code § 21.105. An employer's failure to accommodate is one form of discrimination the TCHRA prohibits. *See id.* § 21.128(a) ("It is an unlawful employment practice for a respondent covered under this chapter to fail or refuse to make a reasonable accommodation to a known individual with a disability . . . .").[1] The parties disagree as to whether Lara was a qualified individual with a disability, and, if so, whether he was denied a reasonable accommodation that would not impose an undue hardship on the employer. We look to federal law to inform our construction and application of the TCHRA because one of its purposes is "to provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 [i.e., the ADA, 42 U.S.C. §§ 12101–12213] and its subsequent amendments." *See id.* § 21.001 (setting forth purposes of TCHRA); *Alamo Heights*, 544 S.W.3d at 764 (looking to federal law for guidance).

### *Qualified Individual*

While conceding the existence of Lara's disability, the Department argues that Lara is not a ***qualified*** individual with a disability. An individual is qualified if he or she can perform a

---

[1] The Department has briefed this Court as though Lara pleaded two counts of discrimination, a traditional adverse-action claim under Section 21.051 of the Labor Code, and the failure-to-accommodate claim governed by Section 21.128 of that Code. Lara's petition includes only a failure-to-accommodate theory. We therefore do not address the Department's arguments regarding any other theory of discrimination. *See* Tex. R. App. P. 47.1.

5

job's essential functions with or without reasonable accommodation. *LeBlanc v. Lamar State Coll.*, 232 S.W.3d 294, 299 (Tex. App.—Beaumont 2007, no pet.). In this case, it is undisputed that in September of 2015, Lara could not perform the essential functions of a general engineering technician without an accommodation and had not been medically cleared to undertake work of any kind. Lara alleges that the requested additional leave is the accommodation that renders him qualified because eventually he would have been healthy enough to perform the essential functions of his job. The Department responds that the requested weeks of leave, even if granted, would not have qualified Lara for his position because Lara's physician did not clear him to return to work on the date the requested leave would have expired. Even assuming this is an accurate characterization of the record, the determination of whether an employee is qualified with accommodation is based on the facts as they existed at the time the request for accommodation is accepted or rejected. *See, e.g.*, *Van Wagenen v. Nielsen*, 749 F. App'x 606 (9th Cir. 2019); *Graves v. Finch Pruyn & Co.*, 353 F. App'x 558, 560 (2d Cir. 2009); *Willard v. Potter*, 264 F. App'x 485, 488 (6th Cir. 2008). Here, the treating physician indicated that Lara could return to work as early as October 21st, 2015. Indulging every inference in Lara's favor, *Alamo Heights*, 544 S.W.3d at 771, we conclude this evidence might allow a reasonable juror to conclude that the requested accommodation rendered Lara qualified for his position at the time the request was rejected.

### *Reasonable Request for Accommodation*

The Department contends that it could not have denied Lara an accommodation because Lara never requested one. That argument is belied by the record. Lara's evidence reflects that he began asking for accommodation as soon as he understood the expiration date of his SLP

6

leave. He contacted numerous Department representatives, including a senior technician in the section, his section supervisor, and the local payroll coordinator. He repeatedly asked if he might be afforded additional leave and what other steps he might take to keep his position. In response, he received conflicting messages as to whether the Department could fulfill his request. He was initially told he had already received the maximum leave, then told additional leave would be available at the discretion of the lead district engineer, and then told there was an unspecified "new law" in effect and the Division probably would not "cut him loose." Without further explanation and with less than a week before the expiration of his existing leave, Lara ultimately received written notice that he would be terminated. When he sought clarification of the decision, he was apparently told to direct any further inquiries to a central office in Austin.

The Department argues that these requests are not valid because he did not file a formal application for unpaid leave, which was provided to him on July 10th, 2015. That paperwork, however, was provided along with instructions on how to request compensation through SLP leave. Lara naturally requested SLP leave rather than unpaid leave. But in late August and early September, notwithstanding Lara's repeated calls, emails, and text messages asking how to keep his job, the Department's representatives apparently never reminded him to submit the application for unpaid leave. Instead, he was told on August 18th that he was already under consideration for extended leave, and a payroll officer gave deposition testimony that she and Lara's supervisor considered his request for unpaid leave at a meeting before deciding to terminate. This is not a case in which the employer was unaware of the desired accommodation or the statements made by the employee were "too indefinite and ambiguous to constitute a formal request." *See Taylor v. Principal Fin. Grp.,*

7

*Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (distinguishing such cases from circumstances like the one here, in which the "disability, resulting limitations, and necessary reasonable accommodations" are "open, obvious, and apparent to the employer"). We reject the Department's characterization of Lara's request for leave as somehow insufficient to constitute a request for accommodation under the TCHRA.

In the alternative, the Department argues that even if Lara's calls, emails, and medical updates are correctly construed as a request for accommodation, the request was not reasonable because Lara had already been on leave for several months, exhausting his own leave and all leave available from the Department's sick pool. But "leave of absence and leave extensions are reasonable accommodations in some circumstances." *Criado v. IBM Corp.*, 145 F.3d 437, 443 (1st Cir. 1998). The reasonableness of a leave request must be considered in light of all the facts and circumstances. *See id.* (gathering authorities). The record here reflects that Lara—a twenty-year veteran of the Department with satisfactory performance evaluations and little or no history of discipline—requested an additional five weeks of unpaid leave to allow for the recovery time recommended by his doctor. The Department's personnel manual allows supervisors the discretion to grant unpaid leave of up to one year. Because a trier of fact could resolve any doubts in Lara's favor and find the request reasonable under these circumstances, *Alamo Heights*, 544 S.W.3d at 771, Lara has satisfied his burden to generate a genuine question of fact on the issue.

### *Undue Hardship*

The Department next raises the affirmative defense of undue hardship. "A showing of undue hardship by the respondent is a defense to a complaint of discrimination . . . ." Tex. Lab.

8

Code § 21.128(b). When evaluating a defense of undue hardship, the courts must consider "the cost of any necessary accommodation and the availability of alternatives or other appropriate relief." *Id.* In support of its motion for summary judgment and plea to the jurisdiction, the Department produced an affidavit by Lara's section supervisor. He stated that his section included fifteen employees at the time of Lara's termination and that his "lengthy absence was placing a mounting strain on [its] operations" and "taking a toll on the office." But he also indicated that two other technicians had left the section during Lara's medical leave—one in July and one in August. He conceded that these two vacancies "hurt [the section] even more" than Lara's absence and did not explain why the section could not have filled those two vacancies to alleviate the strain while still granting Lara's request for a few more weeks of leave.

Lara's competing evidence included his own testimony that during his leave he remained responsive to his co-workers and aware of which colleagues were covering his various responsibilities. He attested that his co-workers were understanding and supportive of him, and he produced emails and text messages that corroborate that characterization. Notwithstanding the extensive communication related to Lara's absence prior to his termination, the Department has not produced any comments reflecting strain caused by Lara's leave or revealing co-worker opposition to his request for additional time off. Indulging every inference and resolving all doubts in Lara's favor, we conclude this record presents genuine questions of fact as to the reasonableness of Lara's requested accommodation and the undue hardship alleged by the Department. *See Alamo Heights*, 544 S.W.3d at 771. The district court therefore correctly denied the Department's motion for

9

summary judgment and correctly overruled its plea to the jurisdiction on this claim. *Miranda*, 133 S.W.3d at 228. We overrule the Department's first issue.

**Retaliation**

In its second issue on appeal, the Department contends the district court erred in overruling the plea to the jurisdiction with respect to Lara's retaliation claim. We agree. Lara's claim fails as a matter of law and he therefore cannot overcome the Department's immunity from suit on this claim. *Garcia*, 372 S.W.3d at 637.

The essential elements of a retaliation claim brought under the TCHRA are: (1) the employee engaged in a protected activity; (2) the employer took action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment decision. *Alamo Heights*, 544 S.W.3d at 782. Protected activity includes opposing a discriminatory practice, making or filing a charge with the Texas Workforce Commission, filing a complaint with an employer, or participating in an investigation, proceeding, or hearing. *See* Tex. Lab. Code § 21.055. When evaluating the alleged causal link between the protected activity and the adverse employment action, "we can consider only events that took place after a plaintiff engaged in a protected activity." *City of Granbury v. Willsey*, No. 02-17-00343-CV, 2018 WL 1324774, at *6 (Tex. App.—Fort Worth Mar. 15, 2018, no pet.) (mem. op.); *accord Cantu v. Hidalgo County*, 398 S.W.3d 824, 827 (Tex. App.—Corpus Christi 2012 pet. denied); *see also Alavi v. Weinstein*, — F.3d —, No. CV 15-2146 (RBW), 2018 WL 4828401, at *8 (D.D.C. Oct. 4, 2018); *Pearson v. Massachusetts Bay Transp. Auth.*, 723 F.3d 36, 42 (1st Cir. 2013); *Kempter v. Michigan Bell Tel. Co.*, 534 F. App'x 487, 491 (6th Cir. 2013); *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 494 (5th Cir. 2011); *Rosa*

*v. Scottsdale Mem'l Health Sys., Inc.*, 132 F.3d 38, 38 (9th Cir. 1997). Here, Lara's only protected activity under the TCHRA occurred when he filed his discrimination complaint with the Texas Workforce Commission. He filed that complaint in March of 2016, six months after his termination. Because this protected activity occurred after the alleged retaliation, Lara cannot establish the causation element of his claim based on that protected activity. *Cantu*, 398 S.W.3d at 827.

Lara, however, contends he also engaged in protected activity when he asked for leave to recover from surgery. As support for his interpretation of the TCHRA, Lara cites to this Court's unpublished opinion in *Texas State University v. Quinn*, No. 03-16-00548-CV, 2017 WL 5985500, at *3 (Tex. App.—Austin Nov. 29, 2017, no pet.) (mem. op.). But we did not suggest in *Quinn* that a reasonable accommodation request is a protected activity. *See id.* Instead, we merely summarized Quinn's position that "she was engaged in protected activity when, among other things . . . she requested an accommodation." *See id.* We went on to hold that the record included "some evidence that she suffered adverse action subsequent to a protected activity" based on allegations that she had filed a discrimination complaint with her employer and a TCHRA charge with the Texas Workforce Commission before the adverse employment action occurred. *See id.* Thus, we did not rest our holding on Quinn's allegation that her request for a reasonable accommodation qualified as protected activity under Section 21.055 of the Labor Code. *See id.*

Lara cites no other Texas authority supporting his construction of the TCHRA. He instead relies heavily on interpretations of Section 12203 of the Americans with Disabilities Act, 42 U.S.C. § 12203(a)–(b), asking this Court to follow the federal courts in holding an accommodation request to be a protected activity for the purpose of establishing a prima facie

11

retaliation claim. Yet while the courts of Texas must look to federal interpretation of Title VII and the ADA for guidance on our interpretation of the TCHRA, *Alamo Heights*, 544 S.W.3d at 764, we consider that guidance at the expense of the statute itself, *see Tarrant Reg'l Water Dist. v. Villanueva*, 331 S.W.3d 125, 133 (Tex. App.—Fort Worth 2010, pet. denied) (finding no need to add language to TCHRA "when our legislature has shown that it knows how to amend the chapter").

Consider the text of the respective statutory provisions. The ADA's prohibition on retaliation provides:

> ***It shall be unlawful to*** coerce, intimidate, threaten, or ***interfere with any individual in the exercise or enjoyment of***, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, ***any right granted or protected by this chapter.***

42 U.S.C. § 12203(b) (emphases added). One of the rights "granted" and "protected" by that chapter is the right to receive "reasonable accommodations [for] the known physical or mental limitations" in the work place, unless such an accommodation "would impose an undue hardship on the operation of the business . . . ." *Id.* § 12112(b)(5) (discrimination—construction). Given this straightforward statutory language, it is not surprising that the Equal Employment Opportunity Commission and the federal courts have concluded, "A request for reasonable accommodation of a disability constitutes protected activity under the ADA, and therefore retaliation for such requests is unlawful." U.S. Equal Emp. Opportunity Comm'n, EEOC-915.004, *EEOC Enforcement Guidance on Retaliation and Related Issues* (Aug. 25, 2016) (citing *Solomon v. Vilsack*, 763 F.3d 1, 15 n.6 (D.C. Cir. 2014)); *see also Solomon*, 763 F.3d at 15 n.6 (gathering authorities so holding).

The TCHRA's prohibition on retaliation provides:

An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:

> (1) opposes a discriminatory practice;
>
> (2) makes or files a charge;
>
> (3) files a complaint; or
>
> (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

Tex. Lab. Code § 21.055 (retaliation). Unlike the analogous provision of the ADA, this Section includes no mention of the exercise of rights otherwise granted by the statute—like the right to request accommodation—as protected activity that might give rise to a retaliation claim. *Cf.* 42 U.S.C. § 12203(b). Lara nevertheless asks this Court to read Section 21.055 generally and holistically in light of its purpose such that a request for accommodation might constitute protected activity. *See* Tex. Lab. Code § 21.001 (listing one purpose as effectuating policies of ADA).

Courts must use caution in reading meaning into any silence within a statute. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980). That said, the canons of statutory interpretation require us to consider the possibility that an enumerated list is exhaustive. *See Harris County v. Crooker*, 248 S.W. 652, 655 (Tex. 1923) (setting forth the canon of *expressio unius est exclusio alterus*). Our state's Legislature enacted the TCHRA nearly a decade before Congress passed the ADA. *See generally* Act of July 7, 1983, 68th Leg., 1st C.S. ch. 7, 1983 Tex. Gen. Laws 37–58 (codified as amended in chapter 21 of the Texas Labor Code). The Legislature then amended the TCHRA in 1993 to make the statute "substantially equivalent to" the ADA by clarifying the

13

TCHRA's purpose and incorporating several definitions and provisions of the ADA into the TCHRA. *See* Texas House of Representatives, Committee on State Affairs, Bill Analysis, H.B. 860, 73d Leg. R.S. (1993). As part of these comprehensive amendments, the Legislature adopted the ADA's definition of "disability" and revised the procedures for reporting violations to comport with federal law. *See* Act of May 24, 1993, 73d Leg., R.S. ch. 276, § 2, 1993 Tex. Gen. Laws 1285. But the Legislature left the retaliation provision unchanged, choosing not to adopt the more expansive cause of action afforded by federal law. Thus, because the Legislature could have incorporated the ADA's broader retaliation provision but did not, we will not rewrite the statute to that effect. *Villanueva*, 331 S.W.3d at 134.

There is, however, some support for Lara's construction. Although not cited by Lara, one of our sister courts has twice held that a request for accommodation is a protected activity under the TCHRA. *See generally Texas Dep't of State Health Servs. v. Rockwood*, 468 S.W.3d 147 (Tex. App.—San Antonio 2015, no pet.), *disapproved of on other grounds by Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755 (Tex. 2018); *Texas State Office of Admin. Hearings v. Birch*, No. 04-12-00681-CV, 2013 WL 3874473 (Tex. App.—San Antonio July 24, 2013, pet. denied) (mem. op.). *Rockwood* involved a nurse that made repeated requests for a workplace accommodation due to a back injury. *Rockwood*, 468 S.W.3d at 150–52. Within a month of her first request, she received notice of disciplinary action and was terminated a few days later. *Id.* at 157–58. *Birch* involved a group of administrative law judges that alleged disability- and age-based discrimination. *Birch*, No. 04-12-00681-CV, 2013 WL 3874473, at *1. One of these judges was terminated just ten days after her physician requested extended deadlines to accommodate the

14

judge's diagnoses of attention deficit disorder, anxiety, and depression. *Id.* at *2, *23–24. In both cases, the San Antonio court held the requests to be protected activity under the TCHRA and held the allegations sufficient to establish a prima facie case of retaliation under that statute.

For the reasons already stated, we disagree with our sister court's interpretation of Section 21.055 of the Labor Code. But even assuming that court correctly construed the Section as including a request for accommodation as a protected activity, we would find the present case distinguishable. To evaluate the alleged causal link between a protected activity and the subsequent adverse action, "we must examine all of the circumstances, including temporal proximity between the protected activity and the adverse action, knowledge of the protected activity, expression of a negative attitude toward the employee's protected activity, failure to adhere to relevant established company policies, discriminatory treatment in comparison to similarly situated employees, and evidence the employer's stated reason is false." *Alamo Heights*, 544 S.W.3d at 790 (citing *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69 (Tex. 2000)). In both San Antonio opinions, the court emphasized the close temporal proximity between the original request for accommodation and the termination before holding that the plaintiff had satisfied her burden to make out a prima facie element of causation. *Rockwood*, 468 S.W.3d at 157–58; *Birch*, No. 04-12-00681-CV, 2013 WL 3874473, at *1. But in the present case, that temporal span is not ten days, as in *Birch*, or even a month, as in *Rockwood*. Instead, Lara was terminated more than four months after he originally requested leave. Moreover, Lara has not identified any other fact or circumstance indicative of retaliation. He has produced no evidence of any negative attitude, departure from policies, or differential treatment. Even construing the record and pleadings in his favor, we

15

conclude Lara has not produced any evidence in support of a protected activity or causation and cannot meet his burden to establish the court's jurisdiction over his retaliation claim. *Miranda*, 133 S.W.3d at 221, 225–26. We therefore sustain the Department's second issue on appeal.

## CONCLUSION

We affirm the district court's order to the extent it overruled the Department's plea to the jurisdiction on Lara's discrimination claim. Because the district court should have sustained the Department's plea with respect to Lara's retaliation claim, we reverse the part of the order overruling that plea and render judgment dismissing the retaliation claim with prejudice.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Baker and Smith
  Concurring and Dissenting Opinion by Chief Justice Rose

Affirmed in Part; Reversed and Rendered in Part

Filed:  May 9, 2019